IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FREDERICK S. DEJOHN II, :
:
         Petitioner, :
:
v. : Civil Action No.14-716-RGA
:
DAVID PIERCE, Warden, and :
ATTORNEY GENERAL OF THE :
STATE OF DELAWARE, :
:
         Respondents. :

## MEMORANDUM OPINION

Frederick S. DeJohn, II. *Pro se* Petitioner.

Gregory E. Smith, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

August 10, 2015
Wilmington, Delaware

ANDREWS, UNITED STATES DISTRICT JUDGE:

Presently pending before the Court is Petitioner Frederick S. DeJohn II's ("Petitioner") Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition"). (D.I. 1) The State filed an Answer in opposition, contending that the Petition should be dismissed because three claims are procedurally barred, and two claims are meritless. (D.I. 10) For the reasons discussed, the Court will dismiss the Petition.

I. **BACKGROUND**

On July 23, 2001, a member of the Knoxville, Tennessee police department contacted Delaware State Police about receiving twelve images of child pornography from Petitioner. (D.I. 10 at 1) The images showed pre-pubescent children engaged in the acts of intercourse, oral sex, and digital penetration. In his internet correspondence of July 20, 2001 with the Knoxville police, Petitioner indicated that he was engaging in sexual intercourse with both his fifteen-year-old and eight-year-old daughters. The Delaware State Police obtained a search warrant for Petitioner's computers. The computers contained images of an adult male engaging in sexual intercourse with an obviously pre-pubescent female. *Id.*

Delaware police arrested Petitioner on July 24, 2001. (D.I. 10 at 2) Petitioner confessed to sending child pornography to a person in Tennessee and to possessing child pornography on his own computers. *Id.* at 1-2. Petitioner had been convicted in New Jersey in 1991 to a felony sex act against his then minor step-daughter. *Id.* at 1.

In September 2001, Petitioner was indicted and charged with ten counts of unlawfully dealing in child pornography and ten counts of possession of child pornography. (D.I. 10 at 2) On June 24, 2002, Petitioner pled guilty to two counts of dealing in child pornography, in exchange for which the State dismissed the balance of the indictment. *See DeJohn v. State*, 60

A.3d 1089, 1090 (Del. 2013). The Superior Court sentenced Petitioner to a total of fifteen years at Level V, suspended after six years for decreasing levels of probation. *See DeJohn v. State*, 93 A.3d 653 (Table), 2014 WL 2522344, at *1 (Del. May 30, 2014). The sentence for Count One was for eight years at Level V, suspended after serving three years for decreasing levels of supervision. (D.I. 12, App. to State's Ans. Br. in *DeJohn v. State*, NO.685/712,2011, at B-18, B-19) The sentence for Count Two was for seven years at Level V, suspended after serving three years to four years at Level III supervision. *Id.*

In December 2002, Petitioner filed a motion for reduction of sentence. (D.I. 10 at 2) In March 2003, the Superior Court modified Petitioner's total sentence to fifteen years at Level V, suspended after four and one-half years for decreasing levels of supervision. *Id.* More specifically, the Superior Court kept the original sentence for Count One but modified the sentence for Count Two to seven years at Level V, suspended after one year and six months for decreasing levels of supervision. (D.I. 12, State's Motion to Affirm in *DeJohn v. State*, No.325,2004, at B15)

On April 12, 2010, Petitioner was charged with violating the terms of his probation ("VOP") by watching pornography on his cell phone and by having contact with a ten-year-old girl. *See DeJohn*, 60 A.3d at 1090. On April 30, 2010, the Superior Court found that Petitioner had violated his probation and sentenced him to a total of ten years at Level V, with credit for twenty-three days, which was suspended entirely for decreasing levels of supervision. *See DeJohn*, 2014 WL 2522344, at *1. More specifically, on Count One, Petitioner was sentenced to five years at Level V, suspended after serving twenty-three days for decreasing levels of supervision. On Count Two, Petitioner was sentenced to five years at Level V, immediately

3

suspended for four years and six months at Level III supervision. (D.I. 12, App. to State's Ans. Br. for *DeJohn v. State*, No. 685/712, 2011, at B-23 to B-25)

In November 2011, Petitioner was charged with a second VOP for having an unrelated minor child in his residence. *See DeJohn*, 60 A.3d at 1090. In December 2011, the Superior Court found Petitioner in violation of his probation and sentenced him to a total of nine years six months at Level V, suspended after serving seven years and six months for probation. *See DeJohn*, 2014 WL 2522344, at *1. More specifically, for Count One, Petitioner was sentenced to four years six months at Level V with no probation to follow, and for Count Two, Petitioner was sentenced to five years at Level V, suspended after serving three years for two years of Level III supervision. (D.I. 12, App. to State's Ans. Br. in *DeJohn v. State*, No. 685/712, 2011, at B-40) Petitioner appealed, asserting, *inter alia*, that the Superior Court judge presiding over his second VOP hearing made continuous inappropriate comments toward Petitioner throughout the second VOP hearing that violated Petitioner's right to due process, and that his 2011 VOP sentence was illegal because it exceeded his original 2002 sentence. *See DeJohn*, 60 A.3d at 1091. On January 18, 2013 the Delaware Supreme Court reversed the Superior Court's sentence for Petitioner's second VOP and remanded the case for re-sentencing before a different judge. *See DeJohn*, 60 A.3d at 1093. Specifically, the Delaware Supreme Court held that there was a sentencing calculation error with respect to the Level III probation in the 2011 VOP sentence that was imposed for Count Two, because it exceeded the length of Petitioner's remaining sentence on that Count. *Id.* at 1092. As a result, the Delaware Supreme Court reversed the second VOP sentence and remanded the case to a different Superior Court judge to recalculate the length of Petitioner's 2011 sentence for Count Two. Given its decision to remand for re-

sentencing, the Delaware Supreme Court held that it did not need to address Petitioner's claim that the judge's comments were indicative of a closed mind. *Id.* at 1092 -93.

On July 18, 2013, during the remanded re-sentencing for Petitioner's second VOP, a different Superior Court judge imposed a total sentence of eight and one-half years at Level V, suspended after seven and one-half years for probation. *See DeJohn*, 2014 WL 2522344, at *1. Specifically, for Count One Petitioner was sentenced to four years six months at Level V with no probation to follow, and for Count Two, Petitioner was sentenced to four years at Level V, suspended after three years to one year at Level Three. (D.I. 12, App. to State's Ans. Br. in *DeJohn v. State*, No.427,2013, at B-49 to B-50) Petitioner simultaneously appealed that decision and filed a motion for sentence modification. (D.I. 10 at 3) The Superior Court denied the modification of sentence motion on October 17, 2013, and the Delaware Supreme Court affirmed the July 2013 VOP sentence on May 30, 2014. *See DeJohn*, 2014 WL 2522344 at *2.

## II. GOVERNING LEGAL PRINCIPLES

### A. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). The AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that —
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>   (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

5

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *see Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *Lines,* 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective

6

factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States,* 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell,* 547 U.S. 518, 537-38 (2005); *Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

### B. Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits,[1] the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly

---

[1] A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn,* 570 F.3d 105, 115 (3d Cir. 2009).

7

established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). This deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98-100 (2011). As recently explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.*

Finally, when reviewing a claim under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210. This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000)(deference is accorded to both implicit and explicit findings of fact); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

### III. DISCUSSION

Petitioner timely filed the § 2254 Petition presently pending before the Court. The Petition asserts the following five grounds for relief: (1) Petitioner's First Amendment right to free exercise of religion was violated during his second VOP hearing; (2) the second VOP sentence imposed in July 2013 violated the Eighth Amendment's prohibition against cruel and unusual punishment; (3) the judge presiding over Petitioner's second VOP hearing in December 2011, and the judge presiding over his second VOP resentencing hearing in July 2013, violated

8

Petitioner's due process rights because they were biased against him;[2] (4) the Delaware Supreme Court denied Petitioner's right to due process during Petitioner's second appeal of his second VOP by failing to address an unidentified alleged due process violation that it also failed to address during his first appeal of his second VOP; and (5) Petitioner was denied his right to a speedy trial because his second VOP re-sentencing on remand was scheduled for a date that was 148 days after the Delaware Supreme Court's January 18, 2013 decision to remand, when it should have been scheduled within seventy days of the Delaware Supreme Court's January 18, 2013 decision to remand.

### A. Claims One, Four, and Five: Procedurally Barred

The record reveals that Petitioner did not present Claims One, Four, and Five to the Delaware Supreme Court on direct or post-conviction appeal. At this juncture, any attempt by Petitioner to raise these claims in a Rule 61 motion would be barred as untimely under Delaware Superior Court Criminal Rule 61(i)(1) and denied as procedurally defaulted under Rule 61(i)(3). *See DeAngelo v. Johnson*, 2014 WL 4079357, at *12 (D. Del. Aug. 15, 2014). Consequently, Claims One, Four, and Five are procedurally defaulted, and the Court cannot review their merits absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the claims are not reviewed.

Petitioner does not allege any cause for his procedural default of Claims One, Four, and Five.[3] In the absence of cause, the Court will not address the issue of prejudice.[4] In addition,

---

[2]For ease of analysis, the Court has renumbered claims two and three, so that original claim two is now claim three, and original claim three is now claim two. The Court has not altered the substance of the claims, just the order in which they are reviewed.

[3]Presumably in an attempt to avoid a determination of procedural default, Petitioner vaguely asserts that he actually presented these claims to the Delaware Supreme Court when he appealed

9

Petitioner has not satisfied the miscarriage of justice exception to the procedural default doctrine because he has not provided new reliable evidence of his actual innocence. For these reasons, the Court will deny the Claims One, Four, and Five as procedurally barred from federal habeas review.

### B. Claim Two: Second VOP Sentence Cruel and Unusual Punishment

In Claim Two, Petitioner contends that his second VOP sentence from July 2013 violates the Eighth Amendment's prohibition against cruel and unusual punishment. The Delaware Supreme Court denied this argument as meritless on appeal from Petitioner's resentencing of his second VOP. Therefore, Petitioner will only be entitled to habeas relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

---

the sentence for the second VOP that was imposed during the July 2013 re-sentencing hearing. (D.I. 19 at 6) The record belies this assertion. (D.I. 12, Appellant's Op. Br. on Appeal for *DeJohn v. State*, No.427,2013, at 2; Appellant's Reply Br. to State's Ans. Br. for *DeJohn v. State*, No.427,2013, at 7) In addition, the Court notes that Petitioner's Reply references *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), in response to the State's contention that the *Martinez* rule does not provide a method of establishing cause for Petitioner's default of Claims One, Four and Five. (D.I. 19 at 5-6) Even if the Court were to construe Petitioner's reference to *Martinez* as an actual attempt to establish cause for his default, the attempt fails. Notably, the instant Petition does not assert any claims alleging that trial counsel provided ineffective assistance, and Petitioner's allusion to "the claims of ineffective assistance of counsel" as being "shown in the Exhibits" does not suffice to assert an actual ineffective assistance of trial counsel claim. (D.I. 19 at 5) Consequently, the Court concurs with the State's conclusion that *Martinez* is inapplicable to this case. Moreover, Petitioner himself concedes that the State "is correct in one sense as to" *Martinez. Id.*

[4] Although Petitioner does not assert any cause for his default of these three claims, his Reply to the State's Answer refers to "new evidence" of judicial bias in an attempt to establish prejudice. (D.I. 19 at 4-5) However, Petitioner's conclusory and unsupported assertions of judicial bias do not constitute "new evidence" of judicial bias sufficient to establish the prejudice sufficient necessary to excuse his default.

10

The Eighth Amendment forbids cruel and unusual punishment, and it applies to the States via the Fourteenth Amendment. *See Robinson v. California*, 370 U.S. 660, 667 (1962). Two decisions of the United States Supreme Court summarize the applicable Eighth Amendment principles for non-capital sentencing: *Lockyer v. Andrade*, 538 U.S. 63 (2003) and *Ewing v. California*, 538 U.S. 11 (2003). In *Lockyer*, the Supreme Court extensively reviewed its prior cases dealing with Eighth Amendment challenges to criminal sentences, and concluded that it has "not established a clear and consistent path for courts to follow [in determining whether a particular sentence for a term of years can violate the Eighth Amendment]." *Lockyer*, 538 U.S. at 72. The Court held that, for the purposes of analyzing an Eighth Amendment claim under § 2254(d)(1), the only clearly established governing legal principle is "[a] gross proportionality principle . . . the precise contours of [which] are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." *Id.*

In *Ewing*, the Supreme Court rejected the defendant's claim that a sentence of twenty-five years to life for stealing three golf clubs was "grossly disproportionate" to the crime. The Court held that the "Eighth Amendment does not require strict proportionality between the crime and the sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id.* at 1186-87. In other words, the Eighth Amendment "contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" *Id.* at 20 (internal citations omitted).

After reviewing Claim Two within the foregoing framework, the Court concludes that the Delaware Supreme Court's decision rejecting Petitioner's Eighth Amendment claim and holding that the sentence on remand is "legal on its face" was neither contrary to, nor an unreasonable application of, the gross proportionality standard as articulated in *Lockyer* and *Andrade*. In

11

Delaware, once the Superior Court has determined that a probationer violated the terms of his probation, the Superior Court is authorized to re-impose any portion of his previously suspended prison term, giving credit for all time previously served on the sentence at Level V incarceration. *See Gamble v. State*, 728 A.2d 1171, 1172 (Del. 1999). The maximum permissible sentence for a probation violation depends upon the probationer's original sentence and the amount of time previously suspended and served at Level V. *See, e.g.*, 11 Del. C. Ann. § 4334(c)(stating that "[i]f the violation is established, the court may . . . require the probation violator to serve the sentence imposed, or any lesser sentence, and, if imposition of sentence was suspended, may impose any sentence which might originally have been imposed").

Here, Petitioner's original 2002 sentence was for a total of fifteen years of incarceration at Level V. For Count One, he was sentenced to a total of eight years at Level V, suspended after serving three years for decreasing levels of supervision. For Count Two, he was sentenced to a total of seven years at Level V, suspended after serving three years for various levels of probation. In 2003, Petitioner's sentence for Count Two was modified to a total of seven years at Level V, suspended after serving one year for decreasing levels of probation; his sentence for Count One was not changed.

When Petitioner committed his first VOP in 2010, he was sentenced to a total sentence of ten years at Level V, immediately suspended for decreasing levels of supervision. Specifically, for Count One, Petitioner was sentenced to five years at Level V, suspended after serving twenty three days for five years at Level IV and then decreasing levels of supervision, and for Count Two, he was sentenced to five years at Level V, suspended for four years six months at Level III). *See DeJohn*, 60 A.3d at 1090-91. However, in its May 30, 2014 decision affirming the July 2013 VOP sentence, the Delaware Supreme Court noted that Petitioner's 2010 VOP sentence

12

was erroneously set for a total of ten years at Level V, because that court calculated that there were only nine years of Level V incarceration left in Petitioner's original sentence for Counts One and Two. *See DeJohn*, 2014 WL 2522344, at *1 n.1. Nevertheless, the Delaware Supreme Court opined that Petitioner was not prejudiced by this error because the total ten year sentence was immediately suspended. *Id.*

When Petitioner committed his second VOP in 2011, he was sentenced to four years six months at Level V for Count One with no probation to follow, and to five years at Level V for Count Two, suspended after serving three years for Level III probation. In other words, Petitioner was sentenced to a total of nine years six months at Level V for his second VOP in 2011. However, during Petitioner's first appeal from his second VOP in January 2013, the Delaware Supreme Court determined that the 2011 VOP sentence for Count Two was erroneously set for five years at Level V, and that the probation portion was incorrect, because, "if [Petitioner] has already served three years of the original seven year Level V sentence, [the sentence] should be four years Level V, suspended after three years for one year, *not two years*, Level III probation." *DeJohn*, 60 A.3d at 1092 (emphasis in original). The Delaware Supreme Court held that there was no error in the calculation of Petitioner's sentence on Count One. Thus, based on the Delaware Supreme Court's calculations in its January 2013 decision, the total Level V time remaining to be served on Petitioner's original sentence was eight years and six months.[5] *See DeJohn*, 60 A.3d at 1092.

Using the foregoing calculations, when Petitioner's second VOP case was remanded for re-sentencing in 2013, the Superior Court was authorized to re-impose eight years and six

---

[5]On habeas review, the Court defers to the Delaware Supreme Court's factual determinations and, therefore, accepts the Delaware Supreme Court's determination concerning the Level V time remaining to be served for both Counts One and Two.

13

months at Level V incarceration, because that was the time remaining to be served from Petitioner's original sentence. Thus, the July 2013 sentence for Petitioner's second VOP did not exceed the authorized statutory limits.

In addition, Petitioner's second VOP was established by competent evidence, and his prior non-incarcerative sentence for his first VOP sentence was not effective in preventing him from committing a second violation of his probation. Thus, after viewing all of these factors together, the Court concludes that the second VOP sentence imposed on remand in July 2013 is not so exceedingly rare or extreme to warrant a finding that the sentence is "grossly disproportionate" to his probation violation. Accordingly, Petitioner's Eighth Amendment claim does not warrant federal habeas relief under § 2254(d)(1).

### C. Claim Three: Judicial Bias

In Claim Three, Petitioner contends that his due process rights were violated because the judge presiding over his second VOP hearing and the judge presiding over his remanded re-sentencing for his second VOP in July 2013 were biased against him. As an initial matter, the Court concurs with the State's assertion that the portion of Claim Three directed against the first judge who presided over his second VOP hearing is moot because Petitioner was re-sentenced by a different judge. Therefore, the Court will focus on the portion of Claim Three concerning the alleged bias of the judge who presided over Petitioner's remanded second VOP re-sentencing.

During Petitioner's remanded second VOP re-sentencing in July 2013, the judge stated that "the original sentence, as recalculated by me, is appropriate. So it is going to be re-imposed." (D.I. 12, Transcript, Violation of Probation Re-Sentencing, July 18, 2013, in *State v. DeJohn*, at 15) In Claim Three, Petitioner contends that the judge acted with a closed and biased mind when determining the July 2013 sentence, because the judge had an "implied preconceived

14

idea" of Petitioner's character, as demonstrated by the fact that the judge "simply" stated that the original sentence was proper, "[a]nd that being reimposed is somewhat different since it was 'recalculated' by me." (D.I. 1 at 114-15) The Court construes Petitioner's assertion as contending that the judge erroneously thought that imposing a "recalculated" sentence was different than merely re-imposing the original sentence.

Petitioner presented this argument concerning the judge's alleged bias on appeal from his re-sentencing of his second VOP. The Delaware Supreme Court denied the argument as meritless, holding that the "sentence is legal on its face" because it was less than the time remaining to be served from Petitioner's original sentence, and also because there was no evidence to support Petitioner's contention that the sentence was the result of bias or a closed mind. *See DeJohn*, 2014 WL 2522344, at *2. Therefore, Petitioner would only be entitled to habeas relief if the Delaware Supreme Court's decision were either contrary to, or an unreasonable application of, clearly established Federal law.

It is well-settled that the Due Process Clause requires a fair trial in a fair tribunal, before a judge with no actual bias against the defendant or interest in the outcome of a particular case. *See Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997). Significantly, there is a presumption that judges as public officials properly discharge their official duties, and a habeas petitioner must rebut this presumption by showing actual bias. *Id.* at 909. A petitioner demonstrates actual bias by showing that he was treated "unfairly" by the trial judge, and "there must be an extremely high level of interference by the trial judge which creates a pervasive climate of partiality and unfairness." *Marshall v. Hendricks*, 103 F.Supp.2d 749, 799 (D.N.J. 2000), *rev'd in part on other grounds*, 207 F.3d 36 (3d Cir. 2002). However, the Supreme Court has recognized that there are some instances where a judge's implied bias creates such a high probability of actual

15

bias that it violates the Constitution. *See Withrow v. Larkin*, 421 U.S. 35, 46 (1975). "Among these cases are those in which the adjudicator has a pecuniary interest in the outcome and in which he has been the target of personal abuse or criticism from the party before him." *Id.* at 47. In addition, implied judicial bias may be found if the judge had significant prosecutorial and adjudicatory functions in the same case. *See In re Murchison*, 349 U.S. 133, 134-36 (1955). Finally, the Supreme Court has indicated that the proper "generalized" inquiry into implied judicial bias is "whether sitting on the case . . . would offer a possible temptation to the average . . . judge to . . . lead him not to hold the balance nice, clear, and true." *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 883 (2009).

Whether construed as alleging actual bias or implied bias on the part of the judge presiding over the remanded resentencing for Petitioner's second VOP, the Court concludes that Claim Three does not warrant habeas relief.[6] With respect to actual bias, nothing in the record concerning the remanded VOP re-sentencing proceeding indicates judicial interference, partiality, or unfairness. As for implied bias, there is no evidence in the record that the judge presiding over the remanded re-sentencing hearing for Petitioner's second VOP: (1) had a pecuniary interest in the outcome of Petitioner's case; (2) was the target of abuse by the parties; (3) engaged in significant prosecutorial and adjudicatory functions in his case; or (4) was tempted to stray from holding the "balance nice, clear, and true." Instead, the record reveals that Petitioner admitted the factual basis for the second VOP, and the re-sentencing judge articulated his reasons for concluding why Petitioner should serve a substantial period of incarceration. Specifically, the judge explained that he was re-imposing a properly recalculated original

---

[6]The Delaware Supreme Court did not distinguish between actual and implied judicial bias when it affirmed the sentence imposed for Petitioner's second VOP on remand.

16

sentence because of the seriousness of Petitioner's original offense, the "sneakiness" of his second violation (*i.e.*, hiding a child in the bathroom), and the importance of protecting young children. (D.I. 12, Transcript, Violation of Probation Re-Sentencing, July 18, 2013, in *State v. DeJohn*, at 14-15) These reasons provided more than a sufficient basis for the second judge to impose the sentence he did, and nothing in the record suggests any judicial bias that could form the basis of a constitutional claim. Thus, the Court concludes that Petitioner has failed to demonstrate that the judge presiding over his remanded second VOP sentencing was actually or implicitly biased against him.

Accordingly, the Court will deny Claim Three for failing to satisfy § 2254(d).

## IV.    PENDING MOTIONS

During the pendency of this proceeding, Petitioner filed two Motions for Discovery (D.I. 15; D.I. 22) and two Motions to Expand the Record (D.I. 20; D.I. 23). The Court has determined that the instant Petition does not warrant relief. Therefore, it will dismiss all four motions as moot.

## V.    CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

## VI. CONCLUSION

For the reasons discussed, the Court concludes that the Petition must be denied. An appropriate Order will be entered.